All right, this is cause number 19-31030, Coastal Bridge Company v. Heatec, Incorporated. Is the appellant ready to proceed? Yes, your honor. L.E.? Yes, your honor. All right, appellant, you may proceed. Good afternoon, your honors. Ron Kito for the appellant, Coastal Bridge Company, L.L.C. I would like to respectfully reserve five minutes of my 20-minute time allotment for rebuttal. May it please the court. The issue before the panel today is whether the district court erred in granting Heatec's motion for summary judgment dismissing Coastal Bridge's lawsuit in a case that was set for a jury trial. A district court's ruling granting a motion for summary judgment is reviewed de novo. In this case, after the district court read three bases for granting the motion into the record. The first basis was spoliation of evidence. Secondly, the district court found that Coastal Bridge had not eliminated other potential causes of the fire and therefore could not carry its burden on causation. In addition, the district court believed that the Heatec service technician who was servicing and troubleshooting the hot oil heater at the time of the fire did not breach the duty of reasonable care owed to Coastal Bridge. Based upon the district court's decision, if this panel finds that the court erred on any one basis in granting the motion for summary judgment, the entire decision should be reversed and remanded. Regarding the district court's decision on spoliation under Guzman versus Jones, the Fifth Circuit requires a showing of bad faith or bad conduct on the part of the alleged spoliator to support a finding of spoliation of evidence. Bad faith in the context of spoliation means purposeful destruction of adverse evidence. Numerous district courts in the Fifth Circuit, relying on Guzman, which are cited in our briefs, have stated that the spoliator must have a culpable state of mind and act with fraudulent intent in a desire to suppress the truth. A defendant such as Heatec alleging spoliation must also show that the spoliated evidence is relevant to the defenses in the case and that it has been prejudiced. In this case, there is no evidence in the record to support the district court's finding that Coastal Bridge acted in bad faith. Coastal Bridge did not intentionally destroy adverse evidence, Coastal Bridge did not intentionally conceal adverse evidence, and Coastal Bridge did not intentionally act to suppress the truth. The evidence in the record... What happened to the two pumps? That seems to me the most concerning. I mean, a lot of this is you're trying to keep the place running, so you're moving it and putting a new heater in, but what happened to the two pumps? It sounds like they just disappeared. Yes, Your Honor, I appreciate the question. If I could direct your attention to ROA 821, which is a photograph of the damaged heater, those pumps are located in the lower right-hand corner. The first time these pumps were mentioned as an issue in this case by Heatec was two years after the fire at the deposition of the Coastal Bridge work crew. At no time before, during, or after the joint inspection did Heatec ask to inspect these pumps, nor have any of the eyewitnesses to the fire stated that there was any arcing, sparking, or smoking coming from these pumps at the time of the fire. Could I understand you to say in before the district judge that you had the pumps and that they were available at some point at the time of the oral argument before the district court? Your Honor, no. Those pump motors were not available at the joint inspection. There's a question of whether they were present or not. Coastal Bridge, excuse me, Heatec did not ask to inspect those motors. Therefore, Coastal Bridge did not have an opportunity to search for them or look for them or present them if they were there. So the answer to the what happened to them question is you don't know. The pumps, the pump motors were apparently disposed of at some point, but there was no request made prior to the inspection or after the inspection that they be inspected by Heatec. Heatec is the manufacturer and designer of this system, Judge. It has superior knowledge. Why did it take them two years to ask or raise these pumps as an issue? And I would also respectfully submit that there's no bad faith here. Guzman v. Jones requires bad faith. There is no bad faith on the part of Coastal Bridge with respect to any of the evidence in this case, and in particular those pumps, because they were never made an issue by Heatec. Counselor, I wanted to ask something you said in your introductory remarks. You mentioned that the district court at the hearing gave three reasons for summary judgment, and I've read the transcript. I see that. There's three. There's spoilation, causation, and no breach, is I think how you listed the three reasons. And then you said if the district court is wrong about any one of those, we have to send it back because you get past summary judgment. I actually read him as saying there's three independent reasons why summary judgment is to knock them all out. So tell me why my understanding of his decision is wrong, because normally if you have no causation, that alone throws you out of court. If you have no breach, that alone throws you out of court. That's correct, Judge. District court did not state, at least in my interpretation, in my reading of his decision, that the basis for granting the dismissing the case. I didn't read where he stated in there there was separate and independent reasons, and I submit that one basis could have affected the other, such as his decision on spoliation could have affected the others. So I did not read the district court as saying that each submit that, but the reason stated in our briefs and here at oral argument, we feel the district court erred on all three, and the decision should be reversed and remanded. But if I agree with you on spoliation, you still have to overcome that there's no breach of duty, which is one of the district court's reasons. That's correct, Judge. The breach of the duty is a question of fact for the fact finder. The fact finder in this case is the jury. Considering a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter. Here we have a troubleshooting situation between Heat Tech and Coastal Bridge. Heat Tech has superior knowledge of this system. Coastal Bridge called Heat Tech for help in troubleshooting this piece of equipment. The Heat Tech service technician knew that the asphalt plant had a power surge prior to the low pressure, low differential pressure alarm. He disregarded that knowledge and instructed the Coastal Bridge operator to actuate a valve on the heater, which caused a displacement and pipes to move. The movement of those pipes... You're claiming that that's a negligent act. Is that correct? I mean, all of your case against Heat Tech is dependent upon what Mr. Weldon said or did during the course of that telephone conversation. Is that correct? That's correct, Judge. Okay, and tell us specifically what he did that fell below a standard of care or some type of negligent act that he committed. Well, he had a duty to provide safe instructions in operating this piece of equipment to experienced a power surge before the service call. The company had knowledge that power surges could damage the electrical systems of these heaters. Despite knowing that, he instructed Coastal Bridge to open a valve, which caused a displacement and allowing the in his deposition that had he just assumed the burner was off, and it should have been off because of the alarm, but it wasn't because of the electrical, the power surge, which caused pressure switches and the safety switches to fail. He stated in his deposition that had he recognized it as an electrical issue, he would have asked a bunch more questions, and those are his words. It's for the jury in this case to weigh the testimony of Weldon and Brissette and Weldon's actions and inactions in troubleshooting the heater. I would like to address three specific issues of spoliation, which the district court misassessed the facts. First, he argued that the heater had been left uncovered and the burn patterns had been deteriorated prior to the joint inspection. That argument was based on the fact that the contrary to its own expert report, heat tech expert Gerald Haynes discusses in detail his analysis of burn patterns on the heater and concludes that the heater was concentrated on the underside of the heater, and that's ROA 507 and 508. I would also note that the heater was preserved well enough for Mr. Haynes to recommend to heat tech that he be allowed to additional testing including arc mapping and disassembly of the heater's burner for closer inspection. Those requests were never communicated to Coastal Bridge and never carried out, and I'll get back to the to the question your honor had on the auxiliary pump motors. Coastal, heat tech's expert did not complete their investigation, but yet heat tech wants to argue that somehow these auxiliary pump motors are relevant to the inquiry. You can't have it both ways. You can't complete your, you can't say you're missing evidence and then also not perform a complete inspection of the available evidence. You can't have it both ways. I would also like to address the issue of disassembly of the heater. Heat tech argues that the heater was disassembled prior to the joint inspection. That was not the case. Andrew Lynch, the Coastal Bridge's fire investigator, testified that he removed the end cap from the heater and a burner cover to inspect them for damage. He attached them. There was no wholesale disassembling of the heater as heat tech argues. Regarding the causation, the district court made a discreet ruling that Coastal Bridge could not rule out, did not rule out other potential causes on the Continental Casualty Pumping versus the City of Lake Charles. That's contrary to the evidence. The district court accepted the causation analysis of Andrew Lynch. However, the court erroneously disregarded his testimony where he eliminated other potential causes. He traced wires, electrical supply wires that feed the heater back to the source and saw no indication that the origin of the fire may have been at the heater's control panel. That's ROA 853 to 854. He also determined that the burn patterns at the heater did not indicate that the heater started on another piece of equipment and transferred to the heater. That's ROA 858 to 859. He eliminated open flames, smoking, gas burner as potential sources as well as the auxiliary pumps and the multimeter that was found at the scene. That's ROA 1124 to 1127 and ROA 1169. I respectfully submit that the district court disregarded that pertinent testimony in finding that coastal bridges did not eliminate other potential causes of the fire. I see my time is about up. All right. Thank you, Mr. Quito. Mr. Guarnillo. Thank you, your honor, and may it please the court. Jeffrey Guarnillo on behalf of Heat Tech Diapoli in this case. This court should affirm the district court's dismissal of coastal bridges actions for three independent reasons, and these are independent reasons noted by both Judge Costa and Judge Engelhardt. The district court, one, dismissed the action appropriately because significant evidence in the case had been spoliated. The order should also be affirmed because there is no evidence of breach in this case that would allow the case to go to a jury for evaluation. And finally, coastal bridges has been unable to exclude multiple alternative hypotheses that could have caused this fire, other than the theory that its own expert has put forward. Turning first to the issue of spoliation, this issue, of course, is reviewed under an abuse of discretion standard, unlike the summary judgment order, which would be a de novo review. And there is ample evidence in the record to support the district court's findings on each of the elements required for spoliation. In order for there to be spoliation, there must, of course, be an obligation to preserve as well as control over the evidence. That factor is not disputed by coastal bridge in this action. The disposal must be intentional. That element is also not disputed in this action. The only two elements that are actually disputed in this case are whether or not the disposal was done in bad faith and whether or not there was prejudice in this case. There is ample evidence in the record to support both of those factors, which significantly support the district court's ruling on the spoliation issue. The first is the issue of bad faith. Shortly after this heater fire occurred, coastal bridges management conducted in-person interviews of their employees who were directly involved in the fire. And those recorded interviews confirmed that its management identified a potential claim against Heat Tech within 24 hours of this fire. Nevertheless, no notice was provided to Heat Tech that they were being targeted by a potential claim by coastal bridge. What then happened was they notified their insurance adjuster and retained an outside expert who conducted an initial evaluation of the heater. And during that initial evaluation of the heater, which Heat Tech did not have notice of and did not participate in, the components of the heater were removed and partially disassembled. The full scope of that disassembly is not known to Heat Tech because we were not present and were not afforded the opportunity to participate. After that inspection was done unilaterally by coastal bridge, it then moved the heater out of its place and sanitized the area where the heater was located, cleaned out all the debris that was present, and then transported it using a front-end loader and chains and deposited on the ground. We were also not present during that process, and we cannot tell from the record how the heater may have been altered through the process of transporting the heater itself. That process was not videoed. It was not photographed. Their expert was not present. And during this process around this... I have a question for you, Sunil. Heat Tech was on the phone with Coastal at the time of the fire. Is that right? That's correct, Your Honor. So you knew about the fire. How long after the fire were you placed on notice that there may be a claim against? We received a notice letter, I believe, on April 30th, just over a month after the fire, or around 30 days after the fire. Unfortunately, by the time we received that notice, the pumps had already gone missing, the heater had already been moved, portions of it had already been disassembled, and the heater had been left out in the open, unsecured. In any way, this was an open yard where outside individuals frequently came in and out of the yard, and it was rained upon in the humid Louisiana atmosphere for many, many days. So there had been significant spoliation that had occurred before Heat Tech even arrived at the site. So once Heat Tech received notice of the potential claim, it assembled an immediate response team, and it sent its in-house engineer... Is that what you're saying? We received notice approximately a month after the fire, yes, Your Honor. All right. And so you believe they contemplated that they would be filing a claim in less than a month before? Yes. Yes. We believe actually within approximately 24 hours, because during the interview of the employees, their risk manager, who also had previously served as an insurance adjuster and had handled thousands of claims, stated that there was a potential product liability claim against Heat Tech. That's in her own words. It's recorded. They recorded her saying that. And that was in the record before the district court. All these individuals also admitted that right after the fire, they knew of their obligation to preserve the heater. Their risk management supervisor stated that. Their director of environmental and safety policy stated that. Their own adjuster stated that. Their own expert stated that. And the fact that these pumps were discarded before Heat Tech was ever on site is quite troubling, because their own expert tested... When you say that the notice was given some 30 days, whatever, by April 28th, are you telling us that there was no dialogue or communication between the two parties or their representatives or even their counsel following a fire at which one of your client representatives was on the phone when the fire occurred? There was no communication whatsoever? I believe the... I don't know if this is in the record, but just in full disclosure to the court, I believe the only communication was an inquiry by Coastal Bridge about a potential replacement heater. They contacted Heat Tech about buying a new heater. There was never any indication they were looking at Heat Tech for a claim, even though that's what their internal dialogue actually indicated. So, you know, the fact that the pumps have gone missing is... So you believe they contemplated that they would be filing some kind of a products liability claim, but then they intentionally destroyed the product. Is that what you're saying? Yeah, or some claim that related to the fire. I don't know if it was a product liability claim. In this case, they actually ended up bringing a negligent servicing claim, but it's clear they were looking at Heat Tech to blame for the fire within 24 hours of the fire. And the connection to Heat Tech would have been that product. Correct. And so you're going to bring a claim based on a product, but then you go out and you that's what you're saying that you believe they did in bad faith. Yes, yes, yes. All right. Yes. And that's based on the sophistication of the individuals that were involved. There were multiple opportunities for Coastal Bridge to choose to preserve evidence, and at each decision point they had, they intentionally chose the course of destruction and disposal. Even after the inspection that was done by Heat Tech, before we knew... I mean, clearly they didn't preserve it like they should. I don't think anyone's really arguing against that. But the cases that find bad faith are typically shredding documents, actually intentionally destroying emails. I mean, here they're trying to keep their place running, and it just doesn't look like bad faith. My second question related to that is, even when you have all that bad faith, typically it means you get an adverse inference in front of the jury. You might get attorney's fees for that spoilation, but it's pretty rare to get the case dismissed just for spoilation, essentially death penalty sanctions. Well, what cases can you point to where spoilation warranted dismissal of the case with facts in the ballpark of this one? Sure. Yes, Judge Costa. I think one of the best cases to look at would be the Tango case, which was cited by the parties. That case specifically noted that the most severe sanctions are appropriate when the subject matter of the lawsuit is what's disposed of. So that distinguishes the case law that relates to emails, which may be more tangential. This is the object that caught fire. This is the object that they say the servicing direction that was provided by Heat Tech is what was incinerated because of what he said. What you're calling the destruction happened incidentally in moving it in not the best manner and things like that, as opposed to, boy, we better get rid of these bad emails. Let's hit the delete button or let's put them in the shredder. I mean, what intentional acts of not giving you evidence do you see here? Sure. I think there's a couple. First, of course, is the issue of the pumps. The pumps certainly could have been preserved while the heater was moved. There's been no explanation provided why the pumps were destroyed. And the pumps are critical, of course, because there's evidence in the record indicating that the only other fire involving a heater like this was a fire that involved negligent maintenance of a pump. Right. When were they informed that there might be this argument that the pumps were not maintained? Well, I think that argument was developed during the course of discovery, particularly when our employees were deposed. Of course, when we first went to the scene to look at the pumps, they weren't there. They'd already been lost and destroyed. And then inexplicably, even after the entire heater, all of the evidence was thrown away. Even before the lawsuit was filed, the heater and every other piece of evidence was destroyed related to the heater before we were made aware of the opinions of their experts. So we were never afforded the opportunity to look at the physical evidence in light of the specific opinions that their expert had. So there is another significant source of loss of evidence that has been detrimental to heat tech. And again, they have disposed of the evidence, the critical evidence in the case. All of the physical evidence has been discarded. But isn't the triggering date when you become aware of the claim you just referenced, knowledge of the other experts opinion, the date of the filing of the lawsuit, isn't the operative date when your client becomes aware that a claim is going to be asserted against your client where the client would have to do some due diligence by way of investigation? Yes. Once we were notified of the fire, we were asked if we wanted to participate in the investigation. We indicated yes, and we did participate in the investigation. However, once we inspect the heater, that doesn't allow them to then dispose of all the physical evidence before suits filed. The evidence remains relevant and important, particularly when we are not provided the opinions of their experts. We're not allowed to determine what specific components of the heater he's focusing on and that we may need to look at for potential rebuttal. In this case, the entire heater was disposed of. As a sanction for spoliation, we talk about dismissal, which is obviously the most drastic sanction. Aren't the cases where that happens really cases of fraud where a party has fraudulently filed an action and deprived the opponent of the very information or data or material necessary to defend the action? Certainly, instances of fraud would support a complete dismissal of the action, but the one case that I think is worth noting... You're not claiming that anybody acted fraudulently in this case, are you? I think the standard is done with an intent to suppress the truth, and that evaluation looks at the complete circumstances of the destruction, and the case law, specifically the In Re Actos case out of the Western District of Louisiana, specifically notes that there is no smoking gun requirement. In fact, if you impose such a requirement, the only party that would ever be held accountable would be the inept spoliators, those that were incapable of disposing of the smoking gun. That's why it's an evaluation of the complete facts and circumstances, and the district court did that. It looked at the facts, what was disposed of, when it was disposed of, and the sophistication of the parties involved, and found bad faith. The other two areas that this court could also affirm the summary judgment grant on is the issue of breach. One last question on spoilation. At the joint inspection, if your client knew the only other fire, like this one, was caused by poor pump maintenance, why didn't you ask to see the pumps then? Oh, we did ask to see the pumps, your honor. Is this all the evidence there is? Yes. When we attended the joint inspection, the pumps were gone. New pumps had already been installed. We've never seen the original pumps, and we don't even know if those were the pumps HETEC originally supplied. They could have been other pumps. I know they'd replaced the whole thing, but did you say to them, where are the old pumps, and they said, we've lost them. I guess I know there was a new system, but did you at that thing say, we think the pumps are the key. That's what caused the other fire a few years back. We want to see the old pumps, and they said, sorry, we threw them out. Is that what happened? Not exactly. We asked, is this all the evidence there is, and the pumps were not there, and when we documented, the pumps were not there. Did anyone ask for the old pumps, to see the old pumps at the joint inspection? Yes or no? If yes, point me where in the record I can find that. No, we did not specifically ask for the pumps. We asked, is this all the evidence there is, and they said, this is it, and there were no pumps there. The next issue is the issue of breach. Of course, this is a negligent servicing case, essentially that Mr. Weldon did not provide adequate instructions over the phone. However, the evidence in the record indicates that Mr. Weldon performed appropriately, based on the information that was provided to him. Mr. Weldon was called that day because the heater would not operate because there was a specific error code. He followed the procedures related to that error code to try to resolve it to a T. He did exactly what he was supposed to do. In fact, every employee of Coastal Bridge who testified in this case, did not blame Mr. Weldon for the fire, did not blame Heat Tech for the fire. The only individual who blamed Heat Tech for the fire was their retained expert. But even he could not explain what Mr. Weldon should have done differently and how it would have prevented the fire. The district court also excluded the ability of their expert to testify on this issue. So the only individual who actually offered any testimony at all in their favor on the issue of breach has been excluded. As a result, the district court was well within its power to grant the summary judgment on the issue of breach because there's just no explanation for what Mr. Weldon should have done differently. There's nothing for a jury to evaluate as to how he should have handled the call differently. When he received the call, he was told there had been a power surge that day, but all the power issues to his knowledge had been resolved. Two fuses had been changed out and there was power to the heater. The issue was there wasn't a flow of thermal fluid through the heater, and he was attempting to restore the flow of the oil through the heating system. It was not an electrical issue that was before him. And that's in part likely why none of the employees of Coastal Bridge blamed Heat Tech. In fact, they were highly complimentary of Heat Tech in their testimony. The final issue that this court should also affirm the summary judgment grant on is the issue of causation. Louisiana law requires that they be able to not only establish that their but that no other hypotheses exist that would predominate or would also be possible, particularly when they rely on circumstantial evidence. And the case on this imposes a significant burden on them in order for them to survive summary judgment. The Myers versus Morrow case, a case out of the Louisiana Court of Appeals, specifically noted that even when you have an impressive amount of circumstantial evidence, when there's an equally amount of the case and grant summary judgment. Similarly, in the constantial casualty case that was cited by the district court, summary judgment was also granted because the plaintiff had failed to meet that burden. In this case, there are multiple possible causes of the fire that cannot be excluded. Their expert cannot keep in mind that there was a significant amount of oil that was spilled on top of the heater and around the heater on the morning of the fire. Their expert cannot exclude the pumps as a possible ignition source for the fire. He never examined those pumps. He never did any testing on those pumps. Nobody has seen those pumps, to our knowledge, since the few days after the fire. They've gone missing since that date. They also cannot exclude the possibility of an electrical fire at the electrical panel of the heater. Keep in mind that there was oil spilled all over the heater when they were trying to put additional oil into the heater that day. They also cannot exclude the possibility that the safeties themselves that were on this heater were intentionally bypassed by Coastal Bridge's own employees. Their own expert said he could not exclude that possibility because the control panel was nothing but ashes by the time he got there to inspect it. When you look at those possible scenarios that cannot be excluded in relation to the theory that's been suggested by Coastal Bridge, it's clear that they do not meet their burden. Their theory depends on multiple independent facts that are not established in the record. For example, they contend that the flame inside the burner was on when their own employees say it was off, and the equipment as designed would not allow the flame to even exist. The error message would have automatically shut off the heater, and there's no evidence in the record indicating that those safeties ever fail. Their expert never did any kind of testing to show that was possible. The only testing in the record related to safeties relates to other equipment at an asphalt plant, and they're not even safety switches. They're pressure transmitter switches, which is a completely different piece of equipment. There's also no evidence that the pipe that they claim the flame escaped through ever moved. The evidence and the interviews that were supplied all state and established that there's no proof that that piping ever bolted into place. Finally, their own witnesses can't pinpoint the exact location where the fire started. There were actually two different fire events. One started at a valve, which was extinguished, and then there was the fire that resulted in this lawsuit. Nobody knows how that fire actually developed, where it started. None of their own employees who were there at the scene can establish how the fire happened, why it happened, and as a result, they don't blame Heat Tech. Therefore, based on the record, the district court did not abuse its discretion in granting spoliation sanctions, and it appropriately found that Coastal Bridge had not met its burden on both the issues of breach and causation under Louisiana law. As a result, we request this court affirm the district court's ruling. All right. Thank you, Mr. Bonillo. Roboto? Yes, Your Honor. Coastal Bridge's employees are not experts. They were not asked to perform an investigation into the cause of the fire. And yes, the four Coastal Bridge employees all testified and all stated in their oral statements shortly after the fire that the fire began and originated at Coral Inlet Valve Number 4 and the Chamber Inlet Piping. And again, that's on ROA 821. It's in the upper left-hand corner. That's where the fire originated, according to the four eyewitnesses. I would also like to add that there was absolutely more communication between Coastal Bridge and Heat Tech after the fire besides just the replacement heater. Coastal Bridge's insurance adjuster contacted or was contacted by counsel for Heat Tech on April 27th or 28th. They discussed the joint inspection. They circulated a joint inspection protocol. The pumps, Mr. Grigliano admitted that they were not asked to be included. They never asked to see those pumps. At the inspection, Heat Tech inspected the site of the fire, the damaged heater, the temporary heater. A pressure test was performed on the damaged heater. Heat Tech was not denied access to any part of Coastal Bridge's asphalt plant to perform its investigation. Coastal Bridge's actions are not actions of a party acting in bad faith. I would also like to add that Mr. Grigliano and Heat Tech argued that they had, they could not determine the cause of the accident. They were prejudiced. But yet, they talk about bypassing safety switches. There's no evidence of any Coastal Bridge employee bypassing a safety switch. There's no evidence that the oil that was spilled caused the fire. For those reasons, Your Honor, the district court erred. It should be reversed. All right. Thank you, counsel. The court will take this matter under advisement, and this concludes our oral argument docket for the day. Mr. Grigliano, Mr. Kito, you are free to leave. Thank you, Your Honor. Thank you.